UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL DE JESUS ALTAMIRANO-SANTIAGO, LUCIO MENDOZA-CASTRO, FREDI SAUL CANSECO-VASQUEZ, and others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>BETTER PRODUCE, INC., RANCHO DEL MAR, INC., C.J.J. FARMING, INC., and JUAN CISNEROS,<br><br>Defendants. | Case No. 19-cv-3964 DDP (FFMx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO PROCEED BY PSEUDONYM**<br><br>[Dkt. 65] |

     Presently before the court is Plaintiffs Manuel de Jesus Altamirano-Santiago, Lucio Mendoza-Castro, and Fredi Saul Canseco-Vasquez (collectively, "Plaintiffs")' Motion for Leave to File Under Seal and Proceed by Pseudonym. (Dkt. 65.) Having considered the submissions of the parties and heard oral argument, the court grants Plaintiffs' Motion

and adopts the following order.

**I. BACKGROUND**

Plaintiffs are "agricultural workers imported from Mexico by Defendants to work in Defendants' strawberry fields." (Dkt. 1, Compl. ¶ 1.) Defendants are Rancho del Mar, Better Produce, Inc., C.J.J. Farming, Inc., all California corporations with their principal place of business in Santa Maria, California, and Juan Cisneros, Chief Executive Officer of all corporate defendants (collectively, "Defendants"). (*Id.* ¶¶ 14-17.) The court has set forth the basic facts of this case in its prior Order, (Dkt. 46), which it repeats in relevant part here.

Plaintiffs "were recruited from Oaxaca to work for Defendants" under the "H-2A program." (*Id.* ¶¶ 20, 45.) Under the H-2A program, an agricultural employer may import workers to work in agriculture on a temporary basis. (*Id.* ¶ 20 (citing 8 U.S.C. § 1101(a)(15)(H)(ii)(a).) Plaintiffs completed visa paperwork with an individual from the office of Defendant Better Produce. (*Id.* ¶ 46.) Plaintiffs allege that they were "required to obtain a passport at their own expense without reimbursement from Defendants." (*Id.* ¶ 48.) Further, Plaintiffs allege that they were "instructed to travel from Oaxaca to the U.S. Consulate" and were required to pay the cost of travel, hotel expenses, the fee to cross the U.S.-Mexican border, and the "subsistence costs on the travel from the border to Santa Maria, California." (*Id.* ¶¶ 59-74.) These costs were "necessary to Plaintiffs and others similarly situated . . . and were not reimbursed by Defendants." (*Id.* ¶ 75.)

Additionally, Plaintiffs allege that each season, a supervisor for Defendants "collected fees from each Plaintiff and others similarly situated in the amount of $675 U.S. Dollars." (*Id.* ¶ 56.) The supervisor "indicated that this fee was meant to cover some of the Defendants' expenses in recruiting foreign workers." (*Id.*) Plaintiffs also allege that their "return travel expenses were Defendants' contractual obligation," but Plaintiffs "arranged their own travel," and paid their own expenses to return to their homes in Oaxaca. (*Id.* ¶¶ 87-92.) Plaintiffs further allege that Defendants did not compensate their

2

travel and wait time to go to work, and Plaintiffs did not always receive a timely meal period, a thirty-minute meal period, or required rest breaks. (*Id.* ¶¶ 98-102.)

Based on these allegations, Plaintiffs bring this action claiming violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 209(a), violations of California's Labor Code, violation of California's Unfair Competition Law, and breach of contract. On July 30, 2019, the court granted conditional certification of the FLSA action and approved the proposed FLSA notice to putative opt-in members. (Dkt. 46.)

Plaintiffs now move for leave to file under seal and proceed by pseudonym. (Dkt. 65, "Motion".) Specifically, Plaintiffs request to (1) amend their complaint to add one new named plaintiff by pseudonym; (2) file future Opt-ins under seal; (3) order Defendants' counsel not to share the names of Opt-ins with their client or reveal the names or identifying information in any way to their clients; (4) order an additional notice informing putative opt-ins that they may join the suit with their names filed under seal, and (5) allow any withdrawals to be filed under seal. (*Id.*)

## II. DISCUSSION

Plaintiffs seek to protect a fourth named plaintiff,[1] and the putative class, from Defendants' coercive conduct and communications. (*See* Motion.) Plaintiffs argue that Defendants have engaged in conduct, such as sending a supervisor to putative class members' homes in Mexico and organizing meetings for current workers in the United States, and have made threats to putative class members such that putative class members fear retaliation, if they do not affirmatively opt-out of the action. (Motion at 6:17-26.) Specifically, during oral argument Plaintiffs represented, and Defendants did not dispute, that Defendants have collected and produced to Plaintiffs' counsel, more than thirty pre-printed forms and over seventy handwritten notes—over 100

---

[1] Three named Plaintiffs are currently named: Manuel de Jesus Altamirano-Santiago, Lucio Mendoza-Castro, and Fredi Saul Canseco-Vasquez. (*See* Compl.)

3

statements—from putative class members purporting to affirmatively opt-out. (*See also* Dkts. 65-2 ¶ 2 (Decl. of Dawson Morton); 67-1 ¶ 8 (Declaration of Juan Cisneros). Plaintiffs contend that the opt-outs are the product of putative members' fear of economic and physical retaliation. (Reply at 2.) Defendants on the other hand, declare that they have not made any threats, attempts to coerce, retaliated, nor "entered into any settlements or agreements to settle claims raised in these proceedings." (Decl. Cisneros ¶ 8.) Defendants instead declare that "[s]everal current and former workers employed by [Defendants] have *voluntarily* provided statements . . . indicating their desire or intention to not be involved in these proceedings." (*Id.* (emphasis added).)

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010). Despite this normal presumption, "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). In the Ninth Circuit, parties are permitted to proceed under pseudonyms when "nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Id.* at 1067-68 (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). When a party seeks to be protected from retaliation, a district court must evaluate (1) "the severity of the threatened harm," (2) "the reasonableness of the anonymous party's fears," and (3) "the anonymous party's vulnerability to such retaliation." *Id.* at 1068.

The need for anonymity and protection from coercive conduct here is evident from the number of opt-out forms, and the language contained therein, that Defendants have collected at this early stage of the litigation. *See, e.g.*, *Marino v. CACafe, Inc.*, No. 16-CV-6291 YGR, 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017) (finding that Plaintiff's representation that "nearly every member of the putative class" signed release suggested

4

a degree of coercion); *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) ("The caselaw nearly universally observes that employer-employee contact is particularly prone to coercion[.]"). During oral argument, the parties acknowledged the following: the putative class in this FLSA and Rule 23 wage and hour class action is approximately 1,500—all low-wage, guest workers from Mexico; of that number, 500 putative members did not receive the FLSA notice because of incorrect addresses; and, more importantly, Defendants have collected more than 100 opt-out forms. While the court recognizes that Plaintiffs have not presented a clear picture of the threats Defendants have made, the court also concludes that Defendants have not provided a credible explanation for the volume of "voluntary" opt-out forms Defendants have collected at this early stage of the proceedings. Moreover, the opt-outs contain language that indicates a fear of retaliation, specifically, a loss of employment. (*See* Dkt 74-1 (Letters # 1-5).) For example, the handwritten opt-out notes, five of which have been provided to the court, contain expressions of gratitude toward Defendants and nearly uniformly contain a statement expressing the desire to continue working with the company. (*See* Dkt. 74-1, at 2 (Letter # 1) "I don't have anything against the company . . . I thank it for the great opportunity they gave me to come and thus be able to provide for my family [and] I hope this isn't the last time to come, but rather to come many more years."; *id.* at 3 (Letter # 2) "These words are to express my most sincere gratitude to the company [Defendant] and the boss, Juan Cisneros . . . I hope to continue working with all of you for many more years."; *id.* at 4 (Letter # 3) "I want to thank the company [Defendant] because thanks to it, I could come to the United States . . . I would like to continue coming [ ] because it's the best company in which I've been able to come."). Additionally, the identical pre-printed forms, "Form[s] to terminate [ ] legal rights," state: "I understand I have arrived at a private agreement with [Defendants] (Dkt. 69-1, Reply Ex. ¶ 3); "I also acknowledge there is a risk that the funds promised will not be paid or that, in the long run, the result will be that the funds are insufficient to what I could gain in court" (*id.* ¶ 4); "I

5

acknowledge that the legal agreement for the services from the attorneys of [Plaintiffs] obligates for attorney services and their incurred expenses" (*id.* ¶ 5); and "I acknowledge the risk, and I still continue with my instruction to my attorneys to withdraw my claims from the lawsuit" (*id.* ¶ 6). Plaintiffs' counsel did not prepare these pre-printed forms. (Decl. Morton ¶ 5.) Therefore, considering the number of opt-out forms, the absence of a credible explanation for the identical pre-printed forms, and the language contained in the opt-outs, the court concludes that Defendants have engaged in conduct designed to undermine the ability of putative class members to opt-in. The court also concludes that Plaintiffs' and the putative class face reasonable fears of economic retaliation because of their vulnerable status. Plaintiffs and putative class members are low-wage, temporary guest workers from Mexico, who are unable to enter the United States and work unless Defendants submit H-2A petitions for them. Moreover, Defendants have plaintiffs' contact information, including their home addresses in Mexico, and Defendants can, and have in the past, visited plaintiffs' homes in Mexico.

Plaintiffs request that the court permit one of four named plaintiffs to proceed anonymously and Plaintiffs do not seek to prevent Defendants' counsel from knowing the true name of the fourth named plaintiff. Plaintiffs only seek to prevent counsels' clients from having knowledge, at this early stage, of the fourth named plaintiff's name and of future opt-ins and future opt-outs. (*See* MTD at 8-9.) Because Plaintiffs seek limited remedial action, Defendants will not be prejudiced at this early stage. The court further concludes that litigating this case on the merits is in the public's interest; Plaintiffs here seek to enforce important statutory rights that benefit the general public. *Advanced Textile*, 214 F.3d at 1073. Defendants may request relief from the court, as necessary, at each stage of the proceeding to ensure that Defendants are not prejudiced. *See id.* ("The court must [ ] determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice."). Balancing the need for anonymity, the minimal prejudice to Defendants,

6

and the public's interest in seeing this matter proceed, the court concludes that permitting a fourth named plaintiff to proceed anonymously is appropriate.

Further, "[b]ecause of the potential for abuse [in the class action context], a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), judgment vacated on other grounds, 132 S. Ct. 74 (2011). Relevant here, it is well established that an employer may communicate *ex-parte* with putative class members, *see Gulf Oil Co.*, 452 U.S. at 100, however, no authority exists for the proposition that an employer may solicit opt-outs *ex-parte*. Indeed, courts have recognized the potential for coercion where an employer solicits opt-outs *ex-parte* and have required curative measures in such circumstances. *See, e.g.*, *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509 (N.D. Cal. 2010); *Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014); *Marino v. CACafe, Inc.*, No. 16-cv-6291 YGR, 2017 WL 1540717 (N.D. Cal. April 28, 2017); *Talavera v. Leprino Foods Co.*, No. 1:15-CV-105-AWI-BAM, 2016 WL 880550 (E.D. Cal. Mar. 8, 2016). Recognizing the serious allegations in this case, the vulnerability of the putative class members, and the number of opt-outs collected unilaterally by Defendant, the court concludes that curative notice in this putative class and FLSA action is necessary.

**IV. CONCLUSION**

The court orders as follows:

1. Plaintiffs' motion for leave to amend the complaint to proceed by pseudonym is granted;
2. Plaintiffs may file future opt-ins and opt-outs under seal;

7

3. Additional notice to putative opt-ins informing them that they may join the suit with their names to be filed under seal is granted;

4. The parties shall meet and confer and file a joint supplemental notice to putative opt-ins, for the court's approval, within fourteen days from the date of this order; and

5. Defendants' counsel shall not reveal the names of opt-ins or opt-outs to their client.

Failure to abide by the court's orders may result in sanctions.

**IT IS SO ORDERED.**

Dated: 11-13-2019

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE