Dawson Morton
Cal. SBN 320811
Santos Gomez
Cal. SBN 172741
LAW OFFICES OF SANTOS GOMEZ
1003 Freedom Boulevard
Watsonville, CA 95076
Ph: 831-228-1560
Fax: 831-228-1542
dawson@lawofficesofsantosgomez.com
santos@lawofficesofsantosgomez.com

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MANUEL DE JESUS ALTAMIRANO-SANTIAGO, LUCIO MENDOZA-CASTRO, FREDI SAUL CANSECO-VASQUEZ, JUAN PEREZ, a pseudonym, and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BETTER PRODUCE, INC., RANCHO DEL MAR, INC., C.J.J. FARMING, INC., and JUAN CISNEROS,<br><br>Defendants. | CIVIL ACT. NO.: 2:19−cv−3964−DDP−FFM<br><br>MOTION AND NOTICE OF MOTION FOR PROTECTIVE ORDER TO LIMIT DISCLOSURE OF NEW PLAINTIFFS AND FOR AN ADDITIONAL ORDER OF PROTECTION<br><br>HEARING: AUGUST 17, 2020 AT 10:00 A.M. BEFORE HON. JUDGE DEAN PREGERSON |

**MOTION AND NOTICE OF MOTION**

TO THIS COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 17, 2020, at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 9C, 9th Floor before the Honorable Dean D. Pregerson of the United States District Court for the Central District of California at the Courthouse located at 350 W. 1st Street in Los Angeles, Plaintiffs will move the Court for a protective order to limit disclosure of new plaintiffs and to limit Defendants' contact with Plaintiffs and the class.  This motion is made following the conference of counsel pursuant to Local Rule 7-3. Plaintiffs'

counsel raised the issues underlying this motion with Defendants' counsel multiple times, including on January 10 and prior to an in person hearing on February 24, 2020.

This motion is based on this Notice of Motion and Motion, the supporting memorandum of law, the two prior hearings and the Court's two prior orders on this issue, the previously filed FLSA consents to sue, the consent withdrawal forms, and the contemporaneously filed declarations under seal pursuant to Local Rule 79-5.2, as well as any further briefing, arguments of counsel, and all papers and records on file in this matter.

## ARGUMENT AND MEMORANDUM OF LAW

### I.  INTRODUCTION

To ensure this case is decided on its merits, Plaintiffs are compelled to move this Court for further protection for the low-income foreign guestworkers who are suing for lawful pay and working conditions. This Court has previously ordered this case may proceed by pseudonym and with Opt-in/Opt-out notices filed under seal. Doc. 84.  Unfortunately, those protections have not been sufficient to keep the courthouse doors open for the farmworker litigants whose poverty and living conditions make them exceedingly vulnerable to extra judicial threats. Workers are reporting threats of loss of employment for themselves and family members, and threats of physical violence, including death, for expressing an interest in enforcing their employment rights. *See* Decl. #1 at ¶ 3 ("I've been threatened and my family's been threatened by Juan Cisneros and his supervisor, Sergio Perez"); Decl. #2 at ¶ 5 ("Juan Cisneros … can do something against me in Mexico from Santa Maria because he has hit men in Mexico and the funds to pay them").  And the pattern of workers purportedly asking to withdraw as soon as their identities are revealed has continued.

This Court has previously found "that litigating this case on the merits is in the public's interest."  Doc. 84 at 6.  But litigation on the merits is at risk. Defendants

have engaged in a pattern of threats and harassment so pervasive as to cause nearly all present litigants to withdraw from the litigation. Defendants' efforts to impede the assertion of claims through threats, coercion, and contact with the Plaintiffs and the class must be stopped. Plaintiffs' counsel cannot join additional workers to this action without the relief sought here.

Plaintiffs' motion seeks additional protection for the farmworker plaintiffs and the class so that this case is not further impeded by Defendants' unlawful conduct. Plaintiffs move for a protective order (1) directing Defendants not to communicate with any plaintiffs or class members; and (2) ordering that Defendants' present counsel and their partners and associates, including the attorney who prepared the withdrawal forms, Mario Juarez, and his partners, associates, and staff, may not receive any identifying information for current plaintiffs or class members. Finally, should Defendants choose to retain new counsel, Plaintiffs seeking an order requiring (3) any future counsel for Defendants be ordered not to communicate any identifying information concerning Plaintiffs or class members to Defendants, associates of Defendants, former counsel for Defendants, or outside counsel for Defendants who have not appeared in this proceeding.

## PRIOR RULINGS

The Defendants' conduct towards the plaintiffs and class members has been the subject of two prior rulings by this Court. In its November 13, 2019 Order, the Court found that "Defendants have engaged in conduct designed to undermine the ability of putative class members to opt-in." Doc. 84 at 6. At the November 4, 2019 hearing, the Court ordered counsel for Defendants that they and their clients were not to interfere with the attorney-client relationship.

During, and subsequent to that hearing, Defendants were collecting, with the use of outside counsel, Mario Juarez, forms from the named Plaintiffs and many of the other low-wage foreign workers who have sought to participate in this suit. Juarez Dep. 19:12-22 (testifying to preparing, as attorney for Defendant Cisneros,

C.D. Ca. Form G-01 for the Plaintiffs to appear pro se); *see also* Doc. 90-3 (prepared G-01 forms).

This Court held a second hearing regarding Defendants' conduct on January 27, 2020. In its February 2, 2020 order, the Court found that "[t]hough Defendants' conduct is troubling, Plaintiffs do not request relief against any Defendant, rather, the relief requested is directed to Defendants' attorneys. The requested relief is misdirected." Doc. 111 at 4. The February 3, 2020 order declined Plaintiffs' request for additional relief and ordered Plaintiffs to disclose names to Defendants' counsel but the Court provided that "[n]othing in this order prevents Plaintiffs from seeking future relief." Doc. 111 at 4.

Throughout the motions and hearings, Defendants have continued to obtain withdrawal forms from represented parties. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Doc. 122; Morton Decl. at ¶¶ 3-5. None of those individuals reached by Defendants and their attorney, Mario Juarez, are willing to state what occurred to cause them to no longer wish to proceed with the litigation. *See, e.g.,* Garcia-Gutierrez Dep. at 17:13-18:1 (answering he had never talked to anyone at the farm, including Defendant Cisneros, about his claims); *compare* Cisneros Dep. at 26:15-25 (testifying Garcia-Gutierrez "came over to visit me"), at 38:3-19 (met with Garcia-Gutierrez in the field and told him about Attorney Juarez), at 42:4-11 (Cisneros testifying Garcia-Gutierrez "has called me several times"), and at 65:5-11 (Def. Cisneros testifying he was present with Garcia-Gutierrez in the conference room of attorney Mario Juarez while Garcia-Gutierrez signed documents prepared by Attorney Juarez's firm concerning this litigation). However, other former workers and putative class members now confirm that Defendants use threats of retaliation and physical violence to obtain workers acquiescence and silence. Decl. #1 at ¶ 4 ("all the work for me and my family members was going to go up in flames if I

kept complaining") and at ¶ 6 ("they want to protect their business, and by their actions and comments, they've explained to us that they'll do it by threats, weapons, or assassins"); Decl. #2 at ¶ 5 ("I think if they find out, they're going to come looking for me and they're going to kill me").

Defendants and attorney Juarez have contacted *represented parties* and prepared withdrawal forms for them. Revealing names to Defendants' counsel in this proceeding has led directly and immediately to parties withdrawing. It is now clear that Defendants have used threats of physical violence against former workers who raised issues.[1] Accordingly, Plaintiffs seek an additional protective order to end this conduct to allow this case to be decided on its merits.

## FACTS

As early as June of 2019, Plaintiffs wrote Defendant Cisneros about inappropriate efforts to coerce the workers' silence. Doc. 65-4. In July and August of 2019, Defendants collected opt-out forms from putative class members. Doc. 65 at 3; *see also* Doc. 66 [Sealed Decl.] at ¶ 8. In August, an individual working for Defendants returned to the hometown of many of the Plaintiffs in Mexico and communicated with the Plaintiffs. Cisneros Dep. at 61:21-62:5 (Rodolfo Cruz-Lara went to Mexico during 2019 season for two weeks); Doc. 66 at ¶¶ 6-8; Decl. of D. Morton [Doc. 65-2] at ¶ 4. Plaintiffs made an initial motion concerning this conduct on September 26, 2019. Doc. 65. On November 4, 2019, the Court held a hearing in which the Court admonished Defendants about interfering with the attorney-client relationship. Trans. Nov. 4, 2019 Hearing [Doc. 87] at 13:23:14:1. The Court subsequently issued a November 13, 2019 Order allowing this case to proceed by pseudonym and restricting Defendants' communication with workers regarding this

---

[1] This Court has previously inquired whether the matter might be addressed by retaliation claims. However, litigants who have been chilled with threats of physical violence are unlikely to find the existence of an additional claim as a result of the threats satisfactory.

lawsuit because "no authority exists for the proposition that an employer may solicit opt-outs *ex-parte*[,]" which the Court's order found had occurred. Doc. 84 at 7.

Unbeknownst to Plaintiffs at the time, Defendants were continuing to interfere in the attorney-client relationship by procuring documents purporting to show that Plaintiffs wished to proceed pro se. Juarez Dep. 19:12-22, Ex. 22 to Juarez Dep., and Doc. 90-3. These documents prepared by Attorney Juarez, are dated November 1, 2019 through November 14, 2019. Doc. 90-3 Those documents were prepared by attorney, Mario Juarez, and the paralegal/notary public, Cynthia Thompson, of a separate firm in Santa Maria from Defendants' counsel who have appeared in this litigation. The substitution of counsel forms were prepared to look like they were from Plaintiffs' counsel and did not contain any reference to Attorney Juarez. Juarez Dep. at 28:10-19; Doc. 90-3.

Attorney Juarez testified that he was working for Defendant Cisneros and claimed privilege as to his communications with Defendant Cisneros about the work. Juarez Dep. at 15:23-16:1. Defendant Cisneros however disputes the claim and testified that Defendant Juarez was not working for him, although he claimed to have consulted Defendant Juarez about a divorce. Cisneros Dep. at 29:20-24 (has not consulted Juarez about this suit) and at 30:14-15 (Cisneros went to see Juarez for "an inquiry regarding a divorce"). Divorce was not an area of practice for Attorney Juarez. Juarez Dep. at 11:13-15 ("Q. What type of Law practice do you have? A. Business, real estate, estate planning. I do some personal injury."). The forms prepared by Juarez each came with a proposed order indicating the individual wished to proceed pro se. Doc. 90-3 at 5 (proposed order); Juarez Dep. at 19:12-22 (testifying to preparing the C.D. Ca. form for the Plaintiffs). After the receipt of these forms, Plaintiffs moved to future limit the production of names to Defendants on December 12, 2019. Doc. 90. That motion was the subject of an interim minute order by the Court, Doc. 95, and came for hearing before the Court on January 27, 2020. Doc. 109. On February 3, 2020, the court declined Plaintiffs' request for

additional relief and ordered that names be disclosed to Defendants' counsel. Doc. 111 at 4.

## STANDARD OF LAW

This Court is empowered to order protection under its inherent powers, the Federal Rules, and existing precedent. *See, e.g.*, 29 U.S.C. § 216(b) (barring retaliation under the FLSA); Fed. R. Civ. P. 23(d) (authorizing orders "to protect class members and fairly conduct the action"); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981). This Court "has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981); *see also Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (holding that courts have the "requisite procedural authority" under 29 U.S.C. § 216(b) to issue protective orders governing the joinder of parties in FLSA cases). An order limiting contact with the class is justified where there is a "a likelihood of serious abuses." *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994).

One type of abuse a court may act to prohibit is unsupervised, one-sided, communications with the class. "Unsupervised, unilateral communications with the plaintiff class sabotage …[class litigation] . . . [and] could well be irreparable." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1203 (11th Cir. 1985). As this Court has previously found, "no authority exists for the proposition that an employer may solicit opt-outs *ex-parte*." Doc. 84 at 7. "[E]x parte communications . . . undermine the purposes of Rule 23 and require curative action[,]" *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 517 (N.D. Cal. Sept. 29, 2010), as they "present an acute risk of coercion and abuse[,]" *Marino v. CACafe, Inc.*, 2017 U.S. Dist. LEXIS 64947, at *5 (N.D. Cal. Apr. 28, 2017). "Unlimited contacts by defendants with class member or potential class members serve to undermine the purposes of Rule 23," *Burrell v. Crown Central Petroleum Co.*, 176 F.R.D. 239, 243 (E.D. Tex. 1997), and

present a situation "rife with potential for coercion," *Kleiner*, 751 F.2d at 1202, particularly when class members are contacted directly and in person, *Camp v. Alexander*, 300 F.R.D. 617, 623 (N.D. Cal. 2014). Where the conduct threatens the "relationship that plaintiffs had with their counsel and their participation in th[e] litigation" protection is necessary. *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1380 (S.D. Ga. 2009); *see also Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 491 (C.D. Cal. 2006), *rev'd on other grounds*, 709 F.3d 829 (9th Cir. 2012). Indeed, it is routine for courts to "exercise discretion to correct the effects of pre-certification communications with potential FLSA collective action members after misleading, coercive, or improper communications are made[.]" *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922 (11th Cir. 2014).

The party moving for a protective order must show good cause by demonstrating: (1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper functioning of the litigation. *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697-98 (S.D. Ala. 2003); *see also Camp v. Alexander*, 300 F.R.D. 617, 626 (N.D. Cal. 2014) (requiring "evidence that any particular putative class member was coerced" and noting that "the Supreme Court calls for a clear record and specific findings in order to limit communications.") The record must present more than the "mere possibility of abuses[.]" *Gulf Oil*, 452 U.S. at 104. "Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." *Cox Nuclear Med.*, 214 F.R.D. at 698; *Camp*, 300 F.R.D. at 623 (noting some cases found "extreme and egregious behavior: . . . involv[ing] coercive in-person meetings with employees and [involving] language issues"); *Wright v. Adventures Rolling*

*Cross Country, Inc.*, 2012 U.S. Dist. LEXIS 83505, at *14 (N.D. Cal. June 15, 2012) (limiting communications to the class where "communications have plausibly had a chilling effect on participation in the class action"). Courts in the Ninth Circuit have repeatedly enjoined this type of conduct. *Guifu Li*, 270 F.R.D. at 517-519 (invalidating opt-out forms when defendant employer presented the forms in mandatory one-on-one meetings during work hours); *Wang*, 236 F.R.D. at 488; *Wright*, 2012 U.S. Dist. LEXIS 83505, at *14.

## ARGUMENT

**I. Defendants' Conduct Has Interfered with Workers' Ability to Enforce their Rights.**

    A.   <u>Two Hearings Have Shown Defendants' Troubling Conduct to Undermine this Litigation.</u>

There is little doubt that Defendants' conduct here and the conduct of their counsel was grossly improper. *Camp*, 300 F.R.D. at 625 ("ex parte solicitation of opt-outs by a defendant before class certification is improper."); *Guifu Li*, 270 F.R.D. at 518 (substantial number of current workers submitting opt-outs solicited by defendants evidenced coercion). Defendants have contacted litigants, required current workers and putative class members to sign letters of support/withdrawal, and used attorneys to obtain withdrawal forms from represented parties. Doc. 103 at 2; Doc. 84 at 3-4; Juarez Dep. at 19:12-22. This Court has found the conduct "troubling," Doc. 111 at 4, and has concluded "that Defendants have engaged in conduct designed to undermine the ability of putative class members to opt-in," Doc. 84 at 6. This Court also previously found that Plaintiffs and the class "face reasonable fears of economic retaliation because of their vulnerable status." Doc. 84 at 6. And this Court has noted that Defendants have admitted retaining additional counsel "to engage in ex-parte communications with putative class members[,]" Doc. 111 at 3-4, and to "collect[ing] over 100 statements from putative class members purporting to affirmatively opt out," Doc. 111 at 4. These communications are even more egregious

here because the *ex-parte* communications were made to the represented parties themselves by Mario Juarez, who has testified he was representing Defendants, and his staff. Juarez Dep. 19:8-11.

B. <u>The Existing Pseudonym Order Has Not Prevented Defendants from Coercing Workers to Exclude Themselves from the Litigation.</u>

Defendants have repeatedly targeted the Plaintiffs with improper and coercive conduct, much of it occurring after this Court instructed that the conduct was troubling or should not occur. At the November 4, 2019 Hearing on Plaintiffs' pseudonym motion, this Court instructed Defendants' counsel that "you're not permitted under Ninth Circuit law to interfere with the attorney-client relationship[.]" Trans. Nov. 4, 2019 Hearing at 13:23-25.

Following this hearing, the Court's November 13, 2019 Order made clear that soliciting opt-outs was improper. Doc. 84 at 7. Yet, on November 14, 2019, ten-days after Defendants' counsel responded "of course" it was aware of the duty not to interfere in the attorney-client relationship, Trans. Nov. 4, 2019 Hearing at 14:2, Plaintiff Socrates Garcia-Gutierrez was in the office of attorney Mario Juarez, signing documents Attorney Juarez had prepared as counsel for Defendant Cisneros. Doc. 90-3 at 27 (form G-01 signed Nov. 14, 2019). The conduct -- preparing documents to cause an attorney not to represent his client -- not only violated this Court's instruction at the November 4, 2019 Hearing, it also violated California Bar Rules, including California Rule of Professional Responsibility 4.2.

Yet, Defendants' conduct continued. Plaintiffs filed one declaration under seal in support of their motion to proceed by pseudonym. Doc. 66. ███████████
████████████████████████████████
████████████████████████████████
███████████████████████████████
████████████████

1    Most recently, after the January 10, 2020 Hearing and the February 3, 2020
2    Order, Plaintiffs provided the identify of pseudonymed plaintiff, Juan Perez, to
3    counsel for Defendants on February 24, 2020 before a hearing that day.  Doc. 122;
4    Morton Decl. at ¶ 2. ███████████████████████████████████████
5    ███████████████████████████████████. Morton Decl. at ¶¶ 5-6. ████████
6    ████████████████████████████████████████████████████████████
7    ████████████████████████████████████████████████████████████
8    ████████████████████████████████████████████████████████████
9    ███████████████████████████████████████████████████. Doc. 65 at
10   3 (describing "forms to workers for them to complete to instruct their counsel to drop
11   their claims").
12   This conduct, continuously leading to the withdrawal of Plaintiffs, not only
13   demonstrates that Defendants are engaged in continuing coercion and threats towards
14   the Plaintiffs and class members, but the wrongful acts involve or are enabled by
15   Defendants' current counsel.  Morton Decl. at ¶ 7.

16   C.   Defendants Have Used Threats of Violence.

17   Defendants admitted conduct in this litigation includes contacting workers
18   through attorney Juarez, including having a present plaintiff into Juarez's office to
19   sign documents Juarez prepared, procuring letters from class members, and procuring
20   forms for Plaintiffs to appear pro-se. Doc. 111 at 3-4; Juarez Dep. 38:7-16. However,
21   Defendants have also used threats of violence and even death to control their
22   immigrant farm labor workforce. Decl. #1 at ¶ 6 ("I know that they want to protect
23   their business, and by their actions and comments, they've explained to us that they'll
24   do it by threats, weapons or assassins.").
25   Even without overt threats, California district courts have found coercive
26   conduct required protection. *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d
27   1149, 1158 (E.D. Cal. 2018) (finding Plaintiffs "met their burden to show misleading
28   and coercive conduct on Defendant's part" even where "Defendant made no overt

threats to its employees"). The conduct here is brazen, wrongful, and overt. And is interfering with workers' access to the court and ability to advance their litigation. Defendants have continued to procure opt-outs and use attorney Juarez ten days after the Court's November 4 hearing. *Compare* Trans. of Nov. 4, 2019 Hearing at 13 *with* Doc. 90-3 at 27 (G-01 form dated Nov. 14, 2019). Defendants continued to procure opt-outs after the Court's pseudonym Order entered, and even after the January hearing, the Defendants continued, with the help of their counsel, procuring signed forms from the Plaintiffs and Opt-in Plaintiffs meant to interfere with their relationship with Plaintiffs' counsel. Doc. 122. The protections entered to date have not adequately protected existing plaintiffs and class members.

**II.     Given Defendants' Pattern of Conduct, Additional Protections Are Necessary to Allow this Litigation to Be Decided on the Merits.**

Defendants have engaged in illegal conduct intended to threaten, intimidate, and coerce Plaintiffs and class members into abandoning their claims. Plaintiffs are therefore requesting an order to restrict Defendants' communications with Plaintiffs, Plaintiffs' families, and potential class members in order to protect Plaintiffs and their families from harm, to preserve putative class members' rights to freely make their own decisions concerning participation in this litigation, and to ensure that this putative class action may be litigated fairly on the merits. The proposed terms of the protective order are as narrowly drawn as possible in light of the egregious and repeated nature of Defendants' abuses.

**III.    The Proposed Protective Order Is Narrowly Tailored.**

Plaintiffs ask that this Court to prohibit Defendants and their agents from all *ex-parte* communications with Plaintiffs and Plaintiffs' family members, except through this Court, Plaintiffs' counsel, or the formal discovery process. Plaintiffs also request that Defendants be barred from *ex-parte* communications related to this litigation with putative class members and their family members, unless such communications are authorized by the Court, Plaintiffs' counsel, or the formal

discovery process. Plaintiffs' proposed order does not deny Defendants their right to engage in discovery or to communicate with current employees about subjects unrelated to the instant litigation. *Kleiner*, 751 F.2d at 1206.

Given the gravity of Defendants' attempts to convince Plaintiffs to relinquish their claims, no lesser restrictions will be effective. *Hampton Hardware*, 156 F.R.D. at 633-34 ("[A]n order any less restrictive would not effect the purposes of Rule 23. It is difficult to conceive of any advice from [the defendant] regarding the lawsuit that is not rife with potential for confusion and abuse[.]") Plaintiffs' proposed restrictions seek only to curtail the unfettered, coercive and threatening speech in which Defendants have engaged.  If Defendants have a particular, legitimate need for communication with class members outside the discovery process, they are free to petition the Court or Plaintiffs' counsel for approval.  *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 765 (4th Cir. 1998) *vacated on other grounds*, 527 U.S. 1031 (1999) ("If there were employees with whom Circuit City needed to communicate, the procedures were available for Circuit City to gain permission to do so.").

Defendants have no legitimate purpose in communications which violate the anti-retaliation provisions of the FLSA, undermine the policies of Fed. R. Civ. P. 23, and threaten lives. In light of Defendants' glaring violations of federal laws forbidding retaliation, the inherent coerciveness of communications between Defendants and potential class members, and Defendants' demonstrated intent to undermine the policies of this FLSA collective action and putative class action, Plaintiffs respectfully ask that the Court promptly grant a protective order containing the restrictions that Plaintiffs propose.

## CONCLUSION

Plaintiffs ask that the Court enter a protective order (1) barring Defendants, their agents, and counsel from any contact with current litigants or class members; (2) ordering that Defendants' present counsel, and their partners and associates, including Mario Juarez, the attorney who prepared the withdrawal forms, and his partners,

associates, and staff, may not receive any identifying information for current plaintiffs or class members; and (3) precluding any future counsel for Defendants from communicating litigants names to Defendants, their agents, associates, and employees, and their former counsel or any other attorneys who have not appeared in this litigation.

DATED: July 3, 2020

                                           *s/ D. Morton*
                                           DAWSON MORTON
                                           ATTORNEY FOR PLAINTIFFS

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have on July 2, 2020, electronically filed with the Clerk of the Court the foregoing PLAINTIFFS' MOTION AND NOTICE OF MOTION FOR PROTECTIVE ORDER and all, publicly available, attachments. Plaintiffs are not serving Defendants the unredacted declarations filed under seal of Declarants #1 and #2. This filing will be served upon the Defendants in this action using the Court's CM/ECF system which will electronically notice:

Vincent Martinez
Twitchell & Rice
215 North Lincoln
Santa Maria, CA 93458

vmartinez@twitchellandrice.com

Todd Hunt
Law Offices of Todd Hunt
7190 W. Sunset Blvd, No. 89
Los Angeles, CA 90045

Todd@toddhuntlaw.com

Counsel for Defendants

s/ Dawson Morton
Dawson Morton