O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL DE JESUS ALTAMIRANO-SANTIAGO, LUCIO MENDOZA-CASTRO, FREDI SAUL CANSECO-VASQUEZ, and others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>BETTER PRODUCE, INC., RANCHO DEL MAR, INC., C.J.J. FARMING, INC., and JUAN CISNEROS,<br><br>　　　　　　　Defendants. | Case No.  19-cv-3964 DDP (FFMx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER TO LIMIT DISCLOSURE OF NEW PLAINTIFFS AND FOR AN ADDITIONAL ORDER OF PROTECTION**<br><br>[Dkt. 124] |

　　Presently before the court is Plaintiffs Manuel de Jesus Altamirano-Santiago, Lucio Mendoza-Castro, Fredi Saul Canseco-Vasquez, and Juan Perez (collectively, "Plaintiffs")' Motion for Protective Order to Limit Disclosure of New Plaintiffs and for an Additional Order of Protection.  (Dkt. 124, Mot.)  Having considered the submissions of the parties

and heard oral argument, the court grants Plaintiffs' Motion in part and adopts the following order.

**I. BACKGROUND**

The court has set forth the basic facts of the case in its prior Orders, (*See* Dkts. 46, 84, 90). In relevant part, Plaintiffs are "agricultural workers imported from Mexico by Defendants to work in Defendants' strawberry fields." (Dkt. 98, First Amended Compl. ("FAC") ¶ 1.) Defendants are Rancho del Mar, Better Produce, Inc., C.J.J. Farming, Inc., all California corporations with their principal place of business in Santa Maria, California, and Juan Cisneros, Chief Executive Officer of all corporate defendants (collectively, "Defendants"). (*Id.* ¶¶ 14-18.) Plaintiffs bring this action against Defendants claiming violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 209(a), violations of California's Labor Code, violation of California's Unfair Competition Law, and breach of contract. (*See* FAC.)

On July 30, 2019, the court granted conditional certification of the FLSA action and approved the proposed FLSA notice to putative opt-in members. (Dkt. 46.) On November 4, 2019, the court heard oral argument on Plaintiffs' motion for leave to proceed by pseudonym. (Dkt. 81.) During oral argument for that motion, Defendants acknowledged that they had collected more than 100 opt-out forms. Many of the pre-printed forms were nearly identical and several handwritten notes expressed similar gratitude toward Defendants for continuing employment. (Dkt. 74-1 (Letters # 1-5).) On November 13, 2019, the court granted Plaintiffs' motion to proceed by pseudonym concluding that, although Plaintiffs had not presented a clear picture of Defendants' alleged threats to putative class members to obtain the more than 100 opt-outs, Defendants did not provide a credible explanation for the volume of "voluntary" opt-outs they had collected. (Dkt. 84, ("Nov. 13 Order"), at 5.) The court noted that no authority exists for the proposition that an employer may solicit opt-outs ex-parte and that curative notice was necessary to protect the putative FLSA and Rule 23 class. The

court ordered that future opt-ins and opt-outs be filed under seal and ordered Defendants' counsel not to reveal the names of opt-ins or opt-outs to their clients. (*Id.* at 8.)

On January 27, 2020, the court heard oral argument on Plaintiffs' motion to modify the court's November 13, 2019 Order. (Dkt. 109.) Plaintiffs sought to modify the November 13 Order to order defense counsel not reveal the name of litigants to third parties and to *instruct their clients not to communicate with individuals* participating in the litigation, not to attempt to interfere in the assertion of claims, and not to request current or former laborers to complete opt-out forms or other documents in opposition to the litigation. (Dkt. 90, Mot. to Modify at 2:12-16.) Plaintiffs' motion to modify was based on Defendants' conduct of retaining an attorney who had not appeared for this action, who had, together with Defendants, prepared and obtained numerous G-01 substitution of counsel forms in which opt-ins purported to proceed pro se. (Dkt. 90-3.) Defendants did not deny the allegations. Indeed, defense counsel acknowledged to the court that Defendants had hired another attorney to engage in ex-parte communications with putative class members but denied prior knowledge their clients' conduct. (Oral Argument, Jan. 27, 2020.) Despite the troubling conduct, the court denied Plaintiffs' motion without prejudice concluding that Plaintiffs' requested remedies were misdirected—the court declined to counsel attorneys how to counsel their clients on requirements that govern client conduct. (Dkt. 111, ("Feb. 3 Order".) The court noted that nothing in the court's order prevented Plaintiffs' from seeking future relief. (*Id.*)

Plaintiffs' now move for a protective order providing as follows:

> (1) directing Defendants not to communicate with any plaintiffs or class members; and (2) ordering that Defendants' present counsel and their partners and associates, including the attorney who prepared the withdrawal forms, Mario Juarez, and his partners, associates, and staff, may not receive any identifying information for current plaintiffs or class members.

3

> Finally, should Defendants choose to retain new counsel, Plaintiffs seeking an order requiring (3) any future counsel for Defendants be ordered not to communicate any identifying information concerning Plaintiffs or class members to Defendants, associates of Defendants, former counsel for Defendants, or outside counsel for Defendants who have not appeared in this proceeding."

(Mot. at 3:8-17.)

## II. LEGAL STANDARD

"Because of the potential for abuse [in the class action context], a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . In addition, such a weighting—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Gulf Oil Co.*, 452 U.S. at 101-02. Courts evaluate four criteria to support an order that limits communication with a putative class: "1) the severity and the likelihood of the perceived harm; 2) the precision with which the order is drawn; 3) the availability of a less onerous alternative; and 4) the duration of the order." *Camp v. Alexander*, 300 F.R.D. 617, 621 (N.D. Cal 2014) (citing *Kleiner v. The First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985)).

## III. DISCUSSION

Plaintiffs assert that "Defendants have contacted litigants, required current workers and putative class members to sign letters of support/withdrawal, and used

4

attorneys to obtain withdrawal forms from represented parties." (Mot. at 9:17-19.) According to Plaintiffs, Defendants have also engaged in "threats of violence and even death to control their immigrant farm labor workforce." (*Id.* at 11:21-22.) Plaintiffs put forth evidence that opt-ins fear harm to themselves and their families in Mexico. (Dkts. 126, 127, 137.) Thus, Plaintiffs argue, the November 13 Order has been insufficient to protect the FLSA and putative class. (*Id.* at 10-12.)

As further evidence that the November 13 Order has not been sufficient to protect the integrity of the class action process, Plaintiffs' counsel declares that he provided the name of the pseudonym plaintiff to defense counsel on February 24, 2020, and the following day, February 25, 2020, the pseudonym plaintiff signed a pre-printed form purporting to dismiss his claims. (Dkt. 125, Morton Decl. ¶ 2.) Plaintiffs argue that the temporal proximity of Plaintiffs' counsel's disclosure of the name to defense counsel and the subsequent opt-out, the close match with previous pre-printed opt-out forms, "not only demonstrates that Defendants are engaged in continuing coercion and threats towards the Plaintiffs and class members, but the wrongful acts involve or are enabled by Defendants' current counsel." (Mot. at 11:13-15.)

Defendants "deny making any of the alleged threats to or against any litigant, potential litigant, or their family." (Dkt. 132, ("Opp."), at 3:8-9.) As to the requested protective order language itself, Defendants argue that the proposed order is not narrowly tailored because there is "no allowance for formal discovery or the fact that many of the plaintiffs, opt-in plaintiffs and putative class members still work for Defendant Rancho Del Mar." (*Id.* at 6:10-12.)

Under Rule 23, district courts have the "power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), judgment vacated on other grounds, 132 S. Ct. 74 (2011). In the employer-employee context, "[t]he caselaw nearly universally observes that employer-employee

5

contact is particularly prone to coercion[.]" *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) (collecting cases); *see also, e.g.*, *Marino v. CACafe, Inc.*, No. 16CV-6291 YGR, 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017) (finding that the representation that "nearly every member of the putative class signed the release form [ ] suggests a degree of coercion."). The potential for coercion is significantly heightened where an employer solicits opt-outs ex-parte. *See, e.g.*, *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509 (N.D. Cal. 2010); *Talavera v. Leprino Foods Co.*, No. 1:15-CV-105-AWI-BAM, 2016 WL 880550 (E.D. Cal. Mar. 8, 2016).

Where a party has engaged in coercive communications, district courts have ordered curative measures. Curative measures have included curative notice, invalidating opt-outs, and prohibiting ex-parte communications regarding the subject of litigation. *See Camp*, 300 F.R.D. at 626 (invalidating opt-outs and requiring corrective notice); *Cty. of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, at *6 (N.D. Cal. July 8, 2010) (invalidating settlement agreements and releases); *Wang*, 709 F.3d 829 (invaliding opt-out forms); *Marino*, 2017 WL 1540717 (invalidating opt-outs and prohibiting ex-parte communications regarding the subject of litigation).

As an initial matter, the court gives little weight to the declarations describing threats of violence and to the pseudonym plaintiff opt-out form. The declarations do not provide sufficient information regarding the timing of the alleged threats. (*See* Dkts. 126, 127, 137.) Each declarant declares, in essence, that they were threatened by Defendant Juan Cisneros or a supervisor after complaining about job conditions. However, it is not clear whether the complaints about job conditions were in connection with the claims in this action and more importantly, whether the alleged threats took place during the course of this litigation. (*See id.*) As to the opt-out form, it appears to have similar language to the prior opt-out forms submitted to the court. The similarity indicates Defendants' involvement in obtaining the opt-out. However, there is no clear evidence regarding who prepared the form.

Despite the deficiencies noted above, the court concludes that Plaintiffs have presented sufficient evidence demonstrating that Defendants have continuously engaged in coercive conduct that has significantly undermined this FLSA and Rule 23 class action.  In the early stages of this lawsuit, Defendants engaged in direct ex-parte communications with Plaintiffs resulting in more than 100 opt-out forms.  Next, Defendants hired an outside attorney, Mario Juarez, who has not appeared for this action, to also communicate ex-parte with *represented* Plaintiffs regarding this action.  Mario Juarez continued to engage in coercive ex-parte communications after the November 4, 2019 hearing on Plaintiff's motion to proceed by pseudonym.  There is also now evidence, not previously presented to the court, that Defendant Juan Cisneros spoke to a named plaintiff about Mario Juarez.  Although the details of that conversation are not clear, Juan Cisneros was soon after present at Mario Juarez's office with the named plaintiff and while the named plaintiff completed an opt-out form.  (Dkt. 139-4, Cisneros Depo. at 11-18.[1])

There is also now evidence that Mario Juarez drafted a letter, which the court has reviewed, that purports to be from the represented named Plaintiffs to Plaintiffs' counsel purpotedly informing Plaintiffs' counsel that they wished to dismiss this action "as soon as possible."  (Dkt. 139-3.)  Mario Juarez then completed numerous Central District of California G-01 substitution of counsel forms for the *represented* Plaintiffs to sign.  (*Id.*; Dkt. 139-2, ("Juarez Depo.").)  The G-01 forms purport to inform the court that Plaintiffs wish to proceed pro se, without counsel.  A legal assistant from Mario Juarez's office, at Mario Juarez's request, then emailed the letter and the G-01 forms to an attorney in Mexico, where plaintiffs and other putative opt-ins live, for the represented Plaintiffs to sign and return to Mario Juarez.  The coercive conduct described above appears to have

---

[1] Pincites refer to the PDF page number.

continued after the court's admonition to Defendants during the November 4, 2019 hearing and after the court's November 13, 2019 Order.

Defendants have not provided any credible explanation regarding Mario Juarez's continued efforts to communicate with represented Plaintiffs regarding this action. Juan Cisneros' declaration in which he denies any threatening or coercive communications with putative opt-in and opt-in members is insufficient. It is evident to the court that Defendants' conduct is inherently coercive—more than 100 opt-outs and in numerous letters of gratitude toward Defendants have resulted. Defendants' coercive conduct is designed to undermine this FLSA and Rule 23 action—Plaintiffs and the putative class face reasonable fears of economic retaliation because of their vulnerable status. Plaintiffs and putative class members are low-wage, temporary guest workers from Mexico, who are unable to enter the United States and work unless Defendants submit H-2A petitions for them. Defendants have plaintiffs' contact information, including their home addresses in Mexico, and Defendants can, and have in the past, visited plaintiffs' homes in Mexico. Indeed, Defendants' attorney, Mario Juarez, appears to have been able to locate an attorney in plaintiffs' hometown in Mexico to communicate with the plaintiffs ex-parte regarding this litigation.

For the reasons set forth above and the reasons set forth on the record, the court concludes that protective measures are necessary in light of the strong evidence of coercive conduct presented here. The severity and the likelihood of harm is significant because of Plaintiffs' vulnerable status, the engagement of an outside attorney, and is evidenced by the high number of opt-outs. Having already ordered less onerous alternatives—providing curative notice and allowing opt-ins and opt-outs to be filed under seal—the court finds that there are no less onerous alternatives at this stage. Defendants have continued to engage in coercive conduct that undermines this action. The court further finds that in the absence of judicial intervention, there is a strong likelihood that Defendants' conduct will continue unabated.

8

The court is mindful of the Supreme Court's admonition that an order limiting communication should "limit[ ] speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil Co.*, 452 U.S. at 101-02. Nothing in this order prevents either party from seeking a modification of terms should the need arise.

The court orders as follows:

(1) The November 13, 2019 Order remains in force;

(2) All future opt-in and opt-out names shall be filed under seal and shall be disclosed for attorneys' eyes only;

(3) All opt-outs in this action are deemed void and are vacated. All individuals who purport to have opted out remain in this action;

(4) Going forward, no opt-out shall be valid unless done in open court before this court or the assigned Magistrate Judge;[2]

(5) Defendants, Defendants' agents, attorneys, attorneys' agents, employees, and those acting in concert or participation with them are hereby prohibited from engaging in any communication with any plaintiff, putative, existing, or potential, class member including, putative, existing, or potential FLSA class member regarding, arising from, or related to, the allegations in the complaint, including any release of claims unless such communication is made through counsel for the plaintiffs;

(6) Defendants, Defendants' agents, attorneys, attorneys' agents, employees, and those acting in concert or participation with them are hereby prohibited from

---

[2] This process is necessary to ensure that any opt-out is free of coercion. Defense counsel acknowledged that the number of opt-outs is irregular and did not object to this additional relief, therefore, the court orders the additional relief herein.

9

engaging in any conduct intended to dissuade any person from participating in this lawsuit, including any party, potential party, or witness;

(7) Retaliation against any plaintiff, putative, existing, or potential class member, including any putative, existing, or potential FLSA class member in connection with this lawsuit is prohibited;

(8) Willful violation of this Order may result in sanctions including, but not limited to, imprisonment, fine, striking the answer, or other sanction that the court finds appropriate.[3]

**IT IS SO ORDERED.**

Dated:  September 8, 2020

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

---

[3] *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005) ("In the context of a sentence of imprisonment for contemptuous conduct, the Supreme Court has long distinguished criminal contempts from civil contempts by looking to the 'character and purpose' of the sentence. *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911). Confinement for contempt is criminal if it is 'punitive' and for the purpose of 'vindicat[ing] the authority of the court.' *Id.* In contrast, contempt is civil if it is 'remedial' and 'for the benefit of the complainant.' *Id.* A civil contemnor 'carries the keys of his prison in his own pocket' because civil contempt is 'intended to be remedial by coercing the defendant to do what he had refused to do.' *Id.* at 442 (internal quotation marks omitted). By contrast, imprisonment for a definite period of time, regardless of the contemnor's future actions, is criminal because the contemnor is 'furnished no key.' *Id.*")